# Cases

---

Leopold Zimmermann and Another, Appellants, v. Elias Heil, Respondent.

*Broker and customer — sales on "margin" — duty of broker, after default of customer, to sell when so directed.*

The relation existing between one who purchases stocks on a "margin" and his broker is not merely that of pledgor and pledgee; there also exists the relation of principal and agent, and, in this view, the broker, as agent, is bound to obey the instructions of his customer.

A customer who had bought through his broker silver certificates, had exhausted his "margin" and refused upon request to advance any more, informed his brokers that if they held the silver longer they did so at their own risk and must bear any further loss. Upon a sale made not until some time thereafter a further loss resulted.

*Held*, that the failure of the brokers to sell within a reasonable time from their receipt of the instructions to sell precluded them from recovering such loss.

Although the broker in such a situation is an agent who has an interest he must obey instructions; he cannot be allowed to speculate upon future changes in value at the risk and expense of his principal.

Appeal by the plaintiffs, Leopold Zimmermann and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 24th day of December, 1894, upon the verdict of a jury rendered after a trial at the New York Circuit, and also from an order entered in said clerk's office on the 21st day of January, 1895, denying the plaintiffs' motion for a new trial made upon the minutes.

The action was brought to recover an alleged loss resulting to plaintiffs, who were stockbrokers, from the purchase for the defend-

ant of certain silver certificates. The silver certificates were bought September 3, 1890, and were sold November 20, 1891. The plaintiff testified that his order to sell was given on or about October 9, 1890.

*William F. Goldbeck,* for the appellants.

*Henry L. Scheuerman,* for the respondent.

O'BRIEN, J. :

This action is brought to recover the balance claimed to be due upon transactions in silver certificates in which plaintiffs acted as defendant's brokers. They purchased on defendant's order and for his account, certificates representing 10,000 ounces of silver bullion, on September 3, 1890, against which the defendant deposited a certain amount as margin. By reason of a decline in the market the margin became exhausted between October 9 and 11, 1890, but the plaintiffs held the certificates until November 21, 1891, when they were sold at a further loss, which, with interest and storage charges, they seek to recover in this action. The defense presented upon the trial was that the transactions were concluded on October 7, 1890, by the defendant's refusal to advance more margin, and by a conversation between the parties, in which, as asserted on one side but denied on the other, the defendant informed plaintiffs that if they thereafter held the silver they did so at their own risk, and that if they incurred loss thereafter they would have to bear it themselves and could not charge it upon the defendant.

The plaintiffs contend that, as they had received no order from defendant to sell prior to the time his margin was exhausted, they had no right or authority to sell before that time; while, on the other hand, after his margin was exhausted, defendant had no right or authority to say what should or should not be done with the silver unless he either put up an additional margin or paid plaintiffs the amount of his then existing indebtedness. In other words, that if even the legitimate inference from the conversation between the parties when the margin was exhausted was that defendant desired plaintiffs to sell out, plaintiffs were under no obligation to do so since it was their privilege, provided they exercised good faith, to sell or not as they thought best for their own protection, after defendant's

margin had been exhausted and he had not responded to their call for additional margin.

The legal question is thus presented as to whether or not a customer, after his margin is exhausted, can refuse a call for more margin and then rid himself of future loss by notice to the broker that he will not be responsible therefor, and that any additional loss that may result from his holding and not selling he must bear himself. Or, differently expressed, was the trial judge right in his statement that if the defendant so informed the plaintiffs, they were bound to sell within a reasonable time after the exhaustion of margin, and that if they held the certificates for a longer period and further loss resulted, such loss must fall on the plaintiffs? The question seems never to have been directly passed upon. It has been held that the legal relation of broker and client is that of pledgor and pledgee (*Markham* v. *Jaudon*, 41 N. Y. 235); and as stated in American and English Encyclopædia of Law (Vol. 18, p. 668), the rule applicable to the contract of pledge is, that when the debt matures and is not paid, the collateral may be sold by the pledgee after reasonable notice to the pledgor. And while, in the absence of directions or notice to sell, the broker or pledgee is not bound to sell, the question here is, what is his duty when directions to sell, or their equivalent, are given him?

As stated, there is a lack of authority upon this point, the nearest upon the facts being *Field* v. *Leavitt* (37 N. Y. Super. Ct. 215), which was a case where personal property had been pledged to secure the payment of a note. It appeared that the pledgor and the parties to the note united in demanding a sale of the greater portion of the property pledged upon an offer procured by them, and the pledgees and owners of the note refused to make the sale. It also appeared that if such sale had been made, and the money paid thereon, the proceeds of the sale would have paid the note, except $200, and the remainder of the property pledged would have sold for a greater sum than the balance of the note; whereas, afterwards the property sold for a much less sum than the note, and left a deficiency to be paid by the parties. It was held that, even assuming that the proposed purchaser was solvent and ready to make the purchase, there being no proof in the case that the refusal to sell by the pledgees was not the exercise of an honest judgment on their

part, having regard to their own rights and interests as well as those of the parties to the note and the owners of the property, the most that was shown and could be claimed from those facts was that the pledgees made a mistake, and that no liability could ensue therefrom under the circumstances. This to some extent sustains the appellants' contention that after the conversation as detailed by the defendant (and which was credited by the jury), of his unwillingness to be responsible for further loss, and if they held the securities longer they did so at their own risk, this placed no obligation on them to sell, and that, while they had the privilege, it was not their duty, nor were they bound to sell.

We think that the facts here, being different, distinguish it from the case referred to. The defendant's statement that he could not afford to deposit more margin, and that he would not lose more than he had lost, amounted in effect to an order to sell, or the expression of a desire to sell, which was the inference and conclusion drawn from the evidence by the jury; and the learned trial judge was, therefore, right in charging that if they believed such to be the fact the defendant would be absolved from further liability. While the legal relation between broker and client is that of pledgor and pledgee, there exists likewise that other legal relation of principal and agent. And we fail to see why an agent, in the case of a purchase and sale of stocks, is not in the same position with respect to his principal as any other agent would be. True, he has an agency coupled with an interest; but this relation of agency when once created is not affected by the question whether the principal has or has not kept good his margin. Until the transaction is finally closed out and a profit or loss results, the relationship between the parties is undisturbed. If we are correct in this view, it would be an anomalous conclusion to hold that an agent, for his own supposed benefit or profit, could violate the instructions of his principal, and if a gain resulted, have the benefit of it, and if a loss, charge it upon his principal. Even though a broker engaged in the sale of stocks has an interest as agent in the transaction or in the property which he holds for his principal, there is no hardship in his being obliged at all times to comply with the client's instructions. It is entirely within the broker's right and power at all times to protect himself by requiring sufficient margin, which, if not forthcoming,

entitles him to sell, and thus avoid a loss. If, on the other hand, he is careless and unbusinesslike, and permits the margin to become exhausted and a loss results, he cannot take the risk of making this good by holding the property of his principal after he is instructed to sell the same, and for any additional future loss occurring after such instructions are given, hold his customer. Any other rule would permit an agent to speculate upon the account and at the risk of his principal.

We think, therefore, that the customer has the right to direct the broker to sell his stock at any time, and unless he does so within a reasonable time thereafter he is responsible for any loss that may result from his failure to obey his customer's instructions; that this rule is not to be varied, whether the customer has or has not exhausted his margin; and that, although it is the broker's privilege to sell upon failure of the customer to keep good his margin after notice to do so, upon taking the proper steps, if he retains the stock after instructions to sell, it is at his own risk and without the right to have recourse to the customer for any loss that may result from his failure within a reasonable time thereafter to sell. This was the view entertained by the learned trial judge; and, though there are isolated sentences in his charge to which exceptions were taken, it will be found upon reading it in its entirety that it clearly presented, upon the evidence, the correct rule of law, and the exceptions taken and urged on this appeal being all substantially directed to the question we have discussed, they must, for the reasons stated, be held untenable.

The question of fact as to whether the conversation occurred in which the defendant told the plaintiffs that he would not advance more margin, and that if they hereafter held the silver they did so at their own risk, and if any loss occurred they must bear it themselves, and the inference which the jury was thus allowed to draw that this was an intimation that the defendant desired the plaintiffs to sell, were resolved, upon conflicting evidence, in defendant's favor, and the verdict so reached should not be disturbed.

Judgment and order accordingly affirmed, with costs.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.